UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| WILLIAM L. LOYD, JR. | * | CIVIL ACTION NO. 24-171 |
| VERSUS | * | SECTION: "A"(5) |
| CITGO PETROLEUM CORPORATION ET AL. | * | JUDGE JAY C. ZAINEY |
| | * | MAGISTRATE JUDGE MICHAEL NORTH |

**ORDER AND REASONS**

The following motion is before the Court: **Motion to Remand to State Court (Rec. Doc. 19)** filed by Plaintiff, William L. Loyd, Jr. One defendant, CITGO Petroleum Corporation, opposes the motion. The motion, submitted for consideration on March 13, 2024, is before the Court on the briefs without oral argument.[1] For the reasons that follow, the motion is **GRANTED**.

**I.   Background**

This case arises from Loyd's alleged exposure to hazardous carcinogens, specifically benzene, which he asserts resulted in his diagnosis with Chronic Myeloid Leukemia ("CML"). On October 4, 2023, Loyd filed suit in Civil District Court for the Parish of Orleans, claiming that the defendants supplied, manufactured, and/or sold hazardous chemicals, or maintained premises in which such chemicals were used, and are liable under theories of negligence and strict liability for his injuries. (Rec. Doc. 1-2, at 5-10). Several defendants answered in state court. No defendant removed the case following service of the petition for damages; the time to remove on that basis subsequently lapsed.

---

[1] CITGO has requested oral argument, but the Court is not persuaded that oral argument would be helpful.

1

As the case progressed, several defendants deposed Loyd. Upon receipt of Loyd's deposition transcript, CITGO removed the case to this Court, asserting that diversity of citizenship jurisdiction existed under 28 U.S.C. § 1332. Loyd is a Louisiana citizen, and the vast majority of defendants are of diverse citizenship; however, two defendants, Turner Industries, LLC and the Port of Lake Charles, are Louisiana citizens. In support of removal, CITGO claims that Turner and the Port were improperly joined, in part relying on Loyd's deposition testimony that he could not recall working alongside Turner employees in the 1980s.[2] CITGO claims that this statement, when considered with other evidence, proves that Loyd has no sustainable action against Turner, and therefore Turner's citizenship should be disregarded in determining whether diversity of citizenship exists. Loyd contends that Turner was properly joined, thus negating subject-matter jurisdiction and requiring remand.

In the alternative, Loyd argues that CITGO failed to secure the consent of all defendants in removing the case and that removal was therefore procedurally defective. CITGO asserts that each of the non-consenting parties is nominal, and therefore their consent was not necessary. Because the Court finds that Turner is properly joined, it does not reach this issue.

## II.     Legal Standard

28 U.S.C. § 1441(a) authorizes removal if a federal district court would have original jurisdiction over the matter. Because removal implicates issues of federalism, and because federal courts have a narrow jurisdictional grant, "[r]emoval statutes . . . are to be construed 'strictly against removal and for remand.'" *Hicks v. Martinrea Automotive Structures (USA), Inc.*, 12 F.4th 511, 515 (5th Cir. 2021) (quoting *Eastus v. Blue Bell Creameries, L.P.*, 97 F.3d

---

[2] Loyd's motion does not address whether the Port was properly joined. Because this Court finds that Turner was properly joined and therefore lacks subject-matter jurisdiction, this Order issues no opinion regarding the propriety of the Port's joinder.

100, 106 (5th Cir. 1996)). It is well-settled that the party invoking the federal court's jurisdiction has the burden of proving that such jurisdiction exists. *See Ticer v. Imperium Ins. Co.*, 20 F.4th 1040, 1045 (5th Cir. 2020); *Smallwood v. Illinois Cent. R.R. Co.*, 385 F.3d 568, 574 (5th Cir. 2004) (en banc). Doubts regarding the propriety of removal jurisdiction should be resolved in favor of remand. *Gasch v. Hartford Acc. & Indem. Co.*, 491 F.3d 278, 281-82 (5th Cir. 2007); *Acuna v. Brown & Root, Inc.*, 200 F.3d 335, 339 (5th Cir. 2000).

Suits may only be removed under diversity jurisdiction "if none of the parties in interest *properly* joined and served as defendants is a citizen of the State in which such an action is brought." 28 U.S.C. § 1441(b) (emphasis added). Because Loyd and Turner are non-diverse, removal is only proper if Turner has been improperly joined. "Since the purpose of the improper joinder inquiry is to determine whether or not the in-state defendant was properly joined, the focus of the inquiry must be on the joinder, not the merits of the plaintiff's case." *Smallwood*, 385 F.3d at 573.

Improper joinder exists in the following scenarios: "(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court." *Id.* (quoting *Travis v. Irby*, 326 F.3d 644, 646–47 (5th Cir. 2003)). In determining whether a party can establish a cause of action, the issue is whether there is "no possibility of recovery by the plaintiff against an in-state defendant, which stated differently means that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant." *Id.* To decide whether a reasonable basis of recovery exists, "[t]he court may conduct a Rule 12(b)(6)-type analysis, looking initially at the allegations of the complaint to determine whether the complaint states a claim under state law

against the in-state defendant." *Id.* Typically, if a plaintiff survives this analysis, then there is no improper joinder. *Id.*

However, the court acknowledged that another inquiry exists. A district court "may, in its discretion, pierce the pleadings and conduct a summary inquiry" when "a plaintiff has stated a claim, but has misstated or omitted discrete facts that would determine the propriety of joinder." *Id.* These cases are ideally "few in number," and the Fifth Circuit has "caution[ed] that a summary inquiry is appropriate only to identify the presence of discrete and undisputed facts that would preclude plaintiff's recovery against the in-state defendant." *Id.* at 573-74. While a summary inquiry has been compared to a summary-judgment-style inquiry, *see Hornbuckle v. State Farm Lloyds*, 385 F.3d 538, 545 (5th Cir. 2004), the procedure "should not entail substantial hearings" and discovery must be extraordinarily limited and conducted only if proven necessary. *Smallwood*, 385 F.3d at 574. Such a summary inquiry only confirms improper joinder where the removing defendant presents evidence that "negate[s] the possibility of liability." *Davidson v. Georgia-Pacific, L.L.C.*, 819 F.3d 758, 766-67 (5th Cir. 2016) (quoting *Travis*, 326 F.3d at 650). That is, although summary judgment can be granted due to a plaintiff's *lack* of evidence, "improper joinder requires the defendant to 'put forward evidence that would negate a possibility of liability on the part of' the in-state defendant." *Hicks*, 12 F.4th at 516 (quoting *Travis*, 326 F.3d at 650 & n.3).

### III.    Discussion

Generally, notice of removal must be filed within thirty days of service of the initial pleading setting forth the claim for relief. 28 U.S.C. § 1446(b)(1). However, when the case is not removable on the basis of the initial pleading, the defendant may file a notice of removal within thirty days of receiving "a copy of an amended pleading, motion, order or other paper from

4

which it may first be ascertained that the case is one which is or has become removable." 28 U.S.C. § 1446(b)(3). Here, no defendant removed the case within thirty days of service of the petition for damages. Rather, upon receipt of Loyd's deposition transcript, CITGO removed the case under the "other paper" provision. A deposition transcript is "other paper" under the removal statute and may render a case removable where it introduces discrete facts calling into question the propriety of joinder of a party. *See Morgan v. Huntington Ingalls, Inc.*, 879 F.3d 602, 612 (5th Cir. 2018).

As described above, there are two routes by which this Court may determine whether Turner was improperly joined. First, it may review the pleadings and determine whether the claim satisfies a basic 12(b)(6)-type inquiry. *Smallwood*, 385 F.3d at 573. Alternatively, it may pierce the pleadings and conduct a summary inquiry. *Id.* By failing to remove until it received Loyd's deposition transcript, CITGO implicitly conceded that the petition satisfies the 12(b)(6) standard.[3] Therefore, because removal is premised on a deposition, this Court is compelled to pierce the pleadings; however, it will do so in a very limited manner.

Loyd's petition for damages refers to daily exposures to benzene, caused in part by Turner contractors' actions. (Rec. Doc. 1-2, at 3-4). However, Loyd later stated in his deposition that, while he worked around Turner contractors recently, he did not recall working around them in the 1980s. (Rec. Doc. 20-1, at 21:1-4). CITGO relied on this statement to remove and claims that, because Loyd "provided no information about when, where or how often he worked near Turner employees, much less how their activities could have exposed him to benzene," Loyd

---

[3] That is, had CITGO believed that Turner or the Port was improperly joined because the pleadings failed to state a claim against those defendants, it would have removed in response to the petition for damages. CITGO did not remove and now contends that the deposition testimony rendered the case removable for the first time, which would only be true if the petition sufficiently stated a claim. Therefore, it has implicitly conceded that the petition sets forth a valid claim for relief, and a 12(b)(6)-style inquiry would result in remand.

5

cannot recover against Turner. (Notice of Removal, Rec. Doc. 1, at 9). CITGO further refutes Loyd's statement that he suffered exposure in his more recent work alongside Turner because his job was managerial and did not include working in maintenance, and therefore was insufficient to contribute to his CML diagnosis.

In his motion, Loyd argues that his inability to recall working around Turner or provide specific details about its employees is insufficient on its own to bar his claim. He argues that CITGO failed to produce any evidence that would negate the possibility of relief, and therefore the summary inquiry should fail. He also produced an affidavit elaborating on his interactions with Turner. Specifically, it provides details about Rabbit, a contractor who worked for International Maintenance Company ("IMC"), a predecessor-in-interest to Turner.[4] CITGO claims that this affidavit is self-serving and conclusory and should not be considered, instead pointing to another deposition that it claims shows that Turner did not work alongside CITGO in the 1980s and therefore cannot be liable.

Having pierced the pleadings and reviewed the evidence, this Court is unconvinced that CITGO has shown that Loyd has no reasonable possibility of relief. CITGO, rather than provide evidence negating the claim, has provided Loyd's deposition testimony and cited a snippet in which he states that he did not recall working alongside Turner in the 1980s.[5] As an initial matter, "deposition testimony . . . is scant evidence from which to predict that there is no reasonable basis that [a plaintiff] might be able to recover against the non-diverse defendants." *Harris v. U.S. Xpress, Inc.*, No. 17-17945, 2018 WL 1737575, at *3 (E.D. La. April 11, 2018) (Zainey, J.) (quoting *Richoux v. CSR Ltd.*, No. 08-931, 2008 WL 576242, at *4 (E.D. La. Feb.

---

[4] As a general matter, IMC and Turner possess the same interests in this suit. However, to avoid confusion, they are referred to separately because Loyd's experiences with each entity were separated by almost thirty years.
[5] CITGO's other exhibits consist of a copy of a similar petition for damages and an affidavit discussing the procedural issue raised by Loyd.

6

29, 2008)). In considering whether to remand the case, the Court must resolve all ambiguities in favor of the plaintiff. "Evidence at trial will not be limited to a few lines of [Plaintiff's] deposition testimony," but will come from various sources. *Id.* at *4. Additionally, CITGO fails to acknowledge that the line of questioning to which it cites referred only to Turner. In the 1980s, Loyd's exposure to Turner would have been through IMC, which was not mentioned at the deposition. It is plausible that Loyd understood the line of questioning to refer only to Turner and not to companies it ultimately acquired.[6]

Further, Loyd's affidavit expands on his deposition testimony. During his deposition, Loyd could only name one contractor—Rabbit—with whom he remembered working, but he could produce no further details. (Rec. Doc. 20-1, at 20:24-25 & 21:1-5). His affidavit explains that Rabbit was an IMC contractor, which he recalled because IMC workers wore a distinctive green helmet. (Rec. Doc. 19-2, at 2). CITGO contends that the affidavit is self-serving and should not be considered, and in any event the affidavit fails to describe any wrongdoing by Turner. (*See* Rec. Doc. 20, at 11 n.37).[7]

Certainly, at times, a "conclusory, self-serving statement by the" party itself is insufficient to satisfy certain legal requirements. *See BMG Music v. Martinez*, 74 F.3d 87, 91 (5th Cir. 1996). However, Loyd's affidavit provides crucial details regarding Rabbit's role at the refinery and aligns with his deposition testimony. In *BMG Music*, the Fifth Circuit refused to consider such an affidavit in the face of a record that "contain[ed] *no other evidence* to overcome

---

[6] Although the attorney and deponent in another cited deposition referred to IMC as "Turner," the attorney had made clear that "Turner" would refer to both Turner and IMC. (Rec. Doc. 19-5, at 8, Deposition Page 10:19-22). No such clarification was made during Loyd's deposition.

[7] The Court notes that CITGO provided a series of instances in which self-serving affidavits were rejected in this district. However, the cited orders were considering motions for summary judgment, not removal under a summary inquiry, and concerned a declaration or affidavit that either contradicted sworn deposition testimony or attempted to create a factual dispute. Not only does Loyd's inability to remember rise to the level of a direct contradiction, but the standard of proof is distinguishable.

the *strong inference of fraud* raised by [the party's] admissions." *Id.* (emphasis added). Such an inference is not present here, nor is it Loyd's duty to provide further evidence that his case belongs in state court. On the contrary, it is CITGO's responsibility to produce evidence demonstrating that he has no reasonable possibility of recovery against Turner. And, as the Fifth Circuit has noted, even if this Court were to exclusively consider Loyd's deposition testimony, thus "limit[ing] his personal knowledge with respect to his exposure . . . to the 'I don't recall' answer," it would "only demonstrate[] an absence of evidence to support [his] claim." *Davidson*, 819 F.3d at 768. As noted above, unlike a summary judgment standard, it is the defendant's responsibility to prove that recovery is not possible; the mere inability to recall "does not 'preclude [Loyd's] recovery against [Turner].'" *Id.* (quoting *Guillory v. PPG Industries, Inc.*, 434 F.3d 303, 310 (5th Cir. 2005)).

CITGO further attempts to use another case's deposition testimony provided by Loyd in which a Turner employee noted that, due to union issues, CITGO and Turner/IMC never worked alongside one another in the 1980s.[8] CITGO's argument focuses on the comment that "[CITGO was] union. [Turner was] nonunion. That did not mix for many, many, many years." (Rec. Doc. 19-5, at 12, Deposition Page 108:12-13). The Turner deponent further stated that these relations did not improve until the early 1990s. (*Id.* at 108:18-19). However, CITGO's citations exclude crucial context. In that same deposition, the deponent testified that Turner employees were present in the plant/facility during the time that CITGO employees were in the 1980s,[9] and that Turner would "support [CITGO's] work" during that time. (*Id.* at 106-08). Although Turner

---

[8] Loyd contends he first worked around Turner/IMC in the 1980s and again beginning in 2010. (Rec. Doc. 1-2, at 4 ¶ 12).

[9] In fact, the deponent confirmed that Turner employees have been present at the CITGO facility consistently since 1977, and that in the 1970s hundreds of Turner employees were present. (Rec. Doc. 19-5, at 10, Deposition Page 88:14-22).

employees "did not work side by side with CITGO employees," that alone does not negate a claim against Turner. (*Id.* at 108:5-6). This evidence, considered together, satisfies the relatively weak "some possibility" standard. *See Davidson*, 819 F.3d at 768. Turner's presence at the facilities still leaves open the possibility that their activity contributed to Loyd's ultimate diagnosis. CITGO's arguments fail to eliminate a possibility of recovery.

Finally, the fact that Loyd's affidavit excluded information regarding his more recent exposure to Turner or how Turner acted wrongfully is of no consequence. Loyd executed this affidavit to provide clarity in light of CITGO's argument that his lack of memory regarding Turner in the 1980s barred recovery. It is not Loyd's duty to affirmatively prove such a fact at this stage in the proceedings.

Even if CITGO's evidence were sufficient to prove that Loyd never came into contact with any representative of Turner/IMC and that he was never exposed to products as a result of the activity of Turner/IMC during the 1980s, his testimony clearly demonstrates that he worked alongside them beginning in 2010. CITGO relies on Loyd's testimony that, by 2010, he worked primarily in a supervisory role and that "[n]one of [his] testimony indicates that he would have ever worked near Turner employees 'opening up equipment while working turnaround and new construction jobs.'" (Rec. Doc. 20, at 8 (quoting Rec. Doc. 20-1 at 186:13-21)). CITGO further claims that "[t]here is no evidence in Plaintiff's deposition or otherwise that he had any exposure to benzene from Turner activities during his employment at Dupre from 2010-2023." *Id.* However, as stated above, a lack of evidence is insufficient to defend removal in a summary inquiry; the issue is whether there exists evidence *negating* the possibility of a cause of action. The mere fact that Loyd's deposition does not detail exposure to benzene caused by Turner during his employment at Dupre is insufficient, on its own, to satisfy the threshold required to

prevail in a summary inquiry. CITGO has provided no evidence negating his possibility of recovery—there still exists "some possibility." *See Davidson*, 819 F.3d at 768.

For the reasons described above, Turner was not improperly joined in this suit. Therefore, this Court lacks subject-matter jurisdiction on the basis that there exist two non-diverse opposing parties, and the case must be remanded. Because there is no subject-matter jurisdiction over this claim, this Court need not and does not reach the question of whether there were procedural deficiencies in the removal process.

Accordingly;

For the reasons set forth above, the **Motion to Remand (Rec. Doc. 19)** filed by William L. Loyd, Jr., is **GRANTED**. Pursuant to 28 U.S.C. § 1447(c), this Court determines it lacks subject-matter jurisdiction and hereby remands this matter to the state court from which it was removed.

March 19, 2024

_____
JAY C. ZAINEY
UNITED STATES DISTRICT JUDGE